**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) GLICK METALS, LLC<br><br>Plaintiff,<br>v.<br><br>(1) MARCO INDUSTRIES, INC.<br><br>Defendant. | Case No.: 26-cv-00585-MTS<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

The Plaintiff, Glick Metals, LLC ("Plaintiff" or "Glick"), hereby brings this Complaint for damages and injunctive relief against the Defendant, Marco Industries, Inc. ("Defendant" or "Marco"), and hereby alleges as follows:

**Nature of the Action**

1. This is an action for utility patent infringement under 35 U.S.C. § 271, design patent infringement under 35 U.S.C. §§ 271, 289, misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836, misappropriation of trade secrets under the Oklahoma Uniform Trade Secrets Act ("OUTSA") 78 Okla. Stat. §§ 85-94, unfair competition, and unjust enrichment.

**The Parties**

2. Glick is a Pennsylvania limited liability company having a registered office at 62 Willow Creek Road, Reading, PA 19605 and a principal place of business at 22 Windmill View Circle, Great Falls, MT 59404.

3. Marco is a corporation duly organized and existing under the laws of the State of Oklahoma and has a principal place of business at 4150 S. 100th E. Ave., Suite 301, Tulsa, OK

74146. Upon information and belief, Marco may be served with process via its registered agent, R. Blake Atkins, 2021 S. Lewis Ave., Suite 760, Tulsa, OK 74104.

## Jurisdiction and Venue

4. This Court has original jurisdiction over Glick's patent claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has original jurisdiction over Glick's DTSA claim under 18 U.S.C. § 1836(c).

6. This Court has supplemental jurisdiction over Glick's OUTSA claim, state law claim of unfair competition, and state law claim of unjust enrichment pursuant to 28 U.S.C. § 1367(a), because these claims form part of the same case or controversy as Glick's DTSA claim.

7. This Court has personal jurisdiction over Marco because Marco is incorporated in Oklahoma, maintains its principal place of business within this District, regularly conducts business within this District, and has purposefully availed itself of the privileges of conducting business in Oklahoma.

8. Venue is proper in this District with respect to Glick's utility and design patent infringement claims pursuant to 28 U.S.C. § 1400(b) because Marco resides in this District, maintains a regular and established place of business in this District, and upon information and belief has committed acts of patent infringement in this District. Marco's headquarters and business operations are located in Tulsa, Oklahoma, within the Northern District of Oklahoma.

9. Venue is proper in this District with respect to Glick's trade secret misappropriation claims under the DTSA and OUTSA, and with respect to Glick's unfair competition and unjust enrichment claims, pursuant to 28 U.S.C. § 1391(b) because Marco resides in this District and a substantial part of the events giving rise to the claims occurred in this District, including, upon

information and belief, Marco's development, use, and/or exploitation of the misappropriated trade secrets.

**Plaintiff's Technology and Development**

10. Glick develops, manufactures, sells, and markets roofing ventilation products, including ridge vents sold under its SNAP-Z® line of products.

11. Glick began development of the SNAP-Z® products in 2014, launching commercial sales of the products in 2015.

12. Glick has invested substantial time, money, labor, skill, and resources in developing its SNAP-Z® products and the equipment, tooling, processes, and know-how used to manufacture those products.

13. Glick's SNAP-Z® products embody proprietary technology and designs relating to Z-shaped closure members for raised seam roof structures.

14. Glick maintains trade secrets in the process used to manufacture the SNAP-Z® products.

15. The SNAP-Z® line of products allows for faster and easier installation of ridge vents, maintaining high durability while improving installation efficiency.

16. The SNAP-Z® line of products has been commercially successful and is sold throughout the United States, with sales and presence in the ridge vent market increasing substantially since its introduction in 2015.

**The Asserted Patents**

17. United States Patent Number 9,359,767 ("the '767 Patent"), entitled "Z-shaped Closure Member with Filter Retention Features", was duly and legally issued on June 7, 2016.

18. The ‘767 Patent claims priority to United States Provisional Patent Application No. 62/046,949, filed on September 6, 2014.

19. The ‘767 Patent lists Emanuel S. Glick, Jr. as the inventor, who assigned ownership of the ‘767 Patent to Glick.

20. The ‘767 Patent claims, among other things, a Z-shaped closure member for mounting a vent cap on a raised seam roof structure.

21. United States Patent Number 9,605,435 (“the ‘435 Patent”), entitled “Z-shaped Closure Member for Raised Seam Roofs”, was duly and legally issued on March 28, 2017.

22. The ‘435 Patent is a continuation of the ‘767 Patent and likewise claims priority to United States Provisional Patent Application No., 62/046,949, filed on September 6, 2014.

23. The ‘435 Patent lists Emanuel S. Glick, Jr. as the inventor who assigned ownership of the ‘435 Patent to Glick.

24. The ‘435 Patent claims, among other things, a Z-shaped closure member for mounting a vent cap on a raised seam roof structure.

25. United States Design Patent Number D767,111 (“the ‘111 Patent”), entitled “Z-closure Member for Mounting a Vent Cap on a Raised Seam Roof”, was duly and legally issued on September 20, 2016.

26. The ‘111 Patent was filed on September 6, 2014.

27. The ‘111 Patent lists Emanuel S. Glick, Jr. as the inventor who assigned ownership of the ‘111 Patent to Glick.

28. The ‘111 Patent claims an ornamental design for a Z-closure member for mounting a vent cap on a raised seam roof.

29. United States Design Patent Number D770,028 ("the '028 Patent"), entitled "Z-closure Member with Perpendicular Flanges", was duly and legally issued on October 25, 2016.

30. The '028 Patent was filed as a divisional application of the '111 Patent, likewise having a filing date of September 6, 2014.

31. The '028 Patent lists Emanuel S. Glick, Jr. as the inventor who assigned ownership of the '028 Patent to Glick.

32. The '028 Patent claims an ornamental design for a Z-closure member with perpendicular flanges.

33. True and correct copies of the '767 Patent, the '435 Patent, the '111 Patent, and the '028 Patent (collectively, the "Glick Patents" or the "Asserted Patents") are attached hereto as Exhibit A ('767 Patent), Exhibit B ('435 Patent), Exhibit C ('111 Patent), and Exhibit D ('028 Patent).

**<u>Plaintiff's Trade Secrets</u>**

34. Glick developed a process for manufacturing the Z-closure member that includes a sequence of steps and custom equipment used to perform those steps.

35. Glick owns trade secrets relating to the equipment, process, tooling, methods, know-how, design choices, manufacturing techniques, and production information used to produce the Z-closure member.

36. Glick's trade secrets are not disclosed in the Asserted Patents and are not publicly available from inspection of Glick's publicly sold products.

37. Glick derives independent economic value from maintaining the secrecy of its trade secrets because the steps and equipment used in the process permit more efficient manufacture of the Z-closure members than is possible with conventional production techniques.

38. Glick has taken reasonable measures to maintain the secrecy of its trade secrets, including restricting access to its facility and manufacturing process, and requiring nondisclosure agreements before providing access to confidential production information.

**Defendant's Product Development**

39. Marco manufactures and sells roofing ventilation products, such as ridge vents and square vents, and other roofing products, such as closures, flashing, sealants, and underlayment.

40. Glick contacted Marco in 2020 to discuss the potential purchase of foam from Marco to be incorporated into the SNAP-Z® line of products. In response, Marco requested a tour of the Glick facility.

41. On March 10, 2020, representatives of Marco, Product Technical Service Manager Robert Harris and Regional Sales Director Barry Broxterman, visited the Glick facility and received a tour of the facility and process for manufacturing the Z-closure member.

42. Mr. Harris and Mr. Broxterman signed nondisclosure agreements for the visit on March 10, 2020, attached hereto as Exhibits E and F.

43. Following the visit by Mr. Harris and Mr. Broxterman, Marco sent samples of their foam to Glick, but soon after in 2020 ceased all communication with Glick regarding the Z-shaped closure members.

44. In 2025, Glick became aware that Marco was developing a product very similar to Glick's Z-closure member.

45. On December 9, 2025, Glick sent a letter to Marco, through its counsel, referencing the Asserted Patents and requesting additional information on the Marco product to determine whether the Marco product infringed the Asserted Patents.

46. Marco did not respond to the letter of December 9, 2025.

47. By February 2026, Marco had released a brochure, attached hereto as Exhibit G, describing their Standing Seam Vent ("SSV").

48. The SSV is a Z-shaped closure member for mounting a vent cap on a raised seam roof structure.

49. Glick acquired a sample of the SSV and, on February 25, 2026, sent a cease and desist letter to Marco through its counsel detailing infringement of the Asserted Patents and Marco's trade secret misappropriation.

50. Marco responded on March 26, 2026, through its counsel, contending that the SSV does not infringe the Asserted Patents and that no trade secret misappropriation occurred.

51. Marco's letter of March 26, 2026 also requested further essential information and claim charts from Glick, suggesting they would review and take these additional details into consideration.

52. Glick gathered and prepared the additional requested detail and, through its counsel, responded to Marco on May 28, 2026. Glick provided detailed claim charts and design correspondence diagrams for the Asserted Patents.

53. The letter also elaborated on the trade secret misappropriation, requesting additional information from Marco and a discussion with Marco's counsel as a good faith investigation of Marco's evidence against misappropriation. Glick specifically described in the letter of May 28, 2026 that it was open to a discussion regarding Marco's alleged use of Glick's trade secrets in an attempt to resolve the misappropriation issue; Glick proposed that Marco gather all their information related to the equipment and processes that Marco uses to produce the SSV, along with the history of Marco's development of the SSV, to be shared only with Glick's attorneys. The letter proposed that, if Glick's attorneys were satisfied based on this shared

information that Marco independently developed the equipment and processes used to produce the SSV as alleged by Marco in the letter of March 26, 2026, Glick would consider the issue of trade secret misappropriation resolved.

54. Marco did not respond to the letter of May 28, 2026 and made no effort to contact Glick or Glick's attorneys to explain Marco's development of the SSV or resolve the issue of trade secret misappropriation because, upon information and belief, Marco had no explanation other than misappropriation of Glick's trade secrets.

55. In the midst of the aforementioned exchanges, upon information and belief, Marco began offering the SSV for sale on or around February 2026.

56. The SSV is currently available on Marco's website at https://marcoindustries.com/products/ventilation/metal-roofs/standing-seam-vent/, as shown in Exhibit H.

**Defendant's Infringing Product**

57. Marco has been aware of the Asserted Patents since at least December 2025, following the initial letter from Glick's counsel specifically identifying the Asserted Patents, but has proceeded with manufacturing, marketing, offering for sale, and selling the SSV.

58. Upon information and belief, Marco has and continues to directly infringe the '767 Patent by making, using, selling, and offering for sale in the United States the SSV that embodies the inventions claimed in the '767 Patent.

59. A claim chart showing a comparison of the SSV to claims 1 and 8 of the '767 Patent is presented in Exhibit I.

60. Upon information and belief, Marco has been, and is, inducing infringement of the '767 Patent by actively and knowingly inducing others to use the SSV to infringe the '767 Patent.

61. Marco was aware of the ‘767 Patent and specifically intended its customers to use the SSV in an infringing manner.

62. Upon information and belief, Marco has been, and is, contributing to infringement of the ‘767 Patent by selling and supplying the SSV, which is a specially adapted component that is a material part of the inventions claimed in the ‘767 Patent and has no substantial non-infringing use.

63. Upon information and belief, Marco has and continues to directly infringe the ‘435 Patent by making, using, selling, and offering for sale in the United States the SSV that embodies the inventions claimed in the ‘435 Patent.

64. A claim chart showing a comparison of the SSV to claims 1 and 12 of the ‘435 Patent is presented in Exhibit J.

65. Upon information and belief, Marco has been, and is, inducing infringement of the ‘435 Patent by actively and knowingly inducing others to use the SSV to infringe the ‘435 Patent. Marco was aware of the ‘435 Patent and specifically intended its customers to use the SSV in an infringing manner.

66. Upon information and belief, Marco has and continues to directly infringe the ‘111 Patent by making, using, selling, and offering for sale in the United States the SSV that embodies the design claimed in the ‘111 Patent.

67. A comparison of the SSV to the claimed design of the ‘111 Patent is presented in Exhibit K.

68. An ordinary observer or purchaser would find the overall design of the ‘111 Patent and the SSV substantially similar and would be deceived into thinking the SSV is the same as the design protected by the ‘111 Patent.

69. Among other things, the overall shape and visual impression of the closure members of the ‘111 Patent and the SSV are the same, with the foam held similarly in the same location within the member.

70. Upon information and belief, Marco has been, and is, inducing infringement of the ‘111 Patent by actively and knowingly inducing others to use the SSV to infringe the ‘111 Patent. Marco was aware of the ‘111 Patent and specifically intended its customers to use the SSV in an infringing manner.

71. Upon information and belief, Marco has and continues to directly infringe the ‘028 Patent by making, using, selling, and offering for sale in the United States the SSV that embodies the design claimed in the ‘028 Patent.

72. A comparison of the SSV to the claimed design of the ‘028 Patent is presented in Exhibit L.

73. An ordinary observer or purchaser would find the overall design of the ‘028 Patent and the SSV substantially similar and would be deceived into thinking the SSV is the same as the design protected by the ‘028 Patent.

74. Among other things, the overall shape and visual impression of the closure members of the ‘028 Patent and the SSV are the same, with the foam held similarly in the same location within the member.

75. Upon information and belief, Marco has been, and is, inducing infringement of the ‘028 Patent by actively and knowingly inducing others to use the SSV to infringe the ‘028 Patent.

76. Marco was aware of the ‘028 Patent and specifically intended its customers to use the SSV in an infringing manner.

**Defendant's Trade Secret Misappropriation**

77. Marco's representatives, Mr. Harris and Mr. Broxterman, signed the nondisclosure agreements provided as Exhibits E and F when touring the Glick facility on March 10, 2020.

78. During the March 10, 2020 visit, Marco's representatives viewed confidential information and trade secrets relating to the equipment and process used to manufacture Glick's Z-shaped closure members.

79. The nondisclosure agreements provide that confidential information constituting a trade secret must be maintained as confidential for as long as the information qualifies as a trade secret.

80. The nondisclosure agreements prohibit reverse engineering or using Glick's confidential information as a basis on which to develop a competing or similar plan or undertaking.

81. Marco developed and released the SSV after touring Glick's facilities on March 10, 2020.

82. Upon information and belief, Marco retained, used, relied upon, disclosed, and/or exploited Glick's trade secrets learned during the visit of March 10, 2020 in breach of the nondisclosure agreements to develop, manufacture, and commercialize the SSV.

83. Upon information and belief, Marco could not have developed and implemented its manufacturing process for the SSV without using, relying upon, or deriving benefit from Glick's trade secret information obtained during the March 10, 2020 visit.

84. Upon information and belief, Marco's first use and exploitation of Glick's trade secrets occurred in Oklahoma, including through Marco's development, manufacturing, and commercialization activities directed to the SSV.

**Harm to Plaintiff**

85. Despite notice of the Asserted Patents and Glick's trade secret rights, Marco has continued to use Glick's trade secrets to manufacture the SSV, and has continued to make, use, offer for sale, sell, and/or distribute the infringing SSV.

86. Marco's infringement of the Asserted Patents has been and continues to be willful.

87. Marco's trade secret misappropriation has been and continues to be willful and malicious.

**COUNT I**
**INFRINGEMENT OF U.S. PATENT NO. 9,359,767**

88. Glick repeats and realleges paragraphs 1 through 87 hereof, as if fully set forth herein.

89. Glick owns all right, title, and interest in and to the '767 Patent.

90. The '767 Patent is valid and enforceable.

91. Upon information and belief, Marco has directly infringed and continues to directly infringe the '767 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, and selling in the United States, and/or importing into the United States the SSV, including within this judicial district, in violation of 35 U.S.C. § 271(a).

92. Upon information and belief, Marco has induced and continues to induce infringement of the '767 Patent in violation of 35 U.S.C. § 271(b) by actively and knowingly encouraging, instructing, directing, and/or aiding others to use, install, sell, offer for sale, and/or distribute the SSV in a manner that infringes the '767 Patent.

93. Upon information and belief, Marco has contributed to and continues to contribute to infringement of the '767 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell the SSV, knowing it to be especially made or especially adapted for practicing the invention of the

‘767 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

94. Marco has had knowledge of the ’767 Patent and its infringement thereof since at least December 9, 2025.

95. Marco’s infringement of the ’767 Patent has been and continues to be knowing, intentional, and willful.

96. Marco’s acts of infringement of the ‘767 Patent have caused and will continue to cause Glick damages for which Glick is entitled to compensation pursuant to 35 U.S.C. § 284.

97. Glick is entitled to treble damages under 35 U.S.C. § 284 because Marco’s infringement has been willful.

98. Marco’s acts of infringement of the ‘767 Patent have caused and will continue to cause Glick immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Glick has no adequate remedy at law.

99. This case is exceptional and, therefore, Glick is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

**COUNT II**
**INFRINGEMENT OF U.S. PATENT NO. 9,605,435**

100. Glick repeats and realleges paragraphs 1 through 99 hereof, as if fully set forth herein.

101. Glick owns all right, title, and interest in and to the ’435 Patent.

102. The ’435 Patent is valid and enforceable.

103. Upon information and belief, Marco has directly infringed and continues to directly infringe the ‘435 Patent, literally and/or under the doctrine of equivalents, by making, using,

offering for sale, and selling in the United States, and/or importing into the United States the SSV, including within this judicial district, in violation of 35 U.S.C. § 271(a).

104. Upon information and belief, Marco has induced and continues to induce infringement of the ’435 Patent in violation of 35 U.S.C. § 271(b) by actively and knowingly encouraging, instructing, directing, and/or aiding others to use, install, sell, offer for sale, and/or distribute the SSV in a manner that infringes the ’435 Patent.

105. Marco has had knowledge of the ’435 Patent and its infringement thereof since at least December 9, 2025, and no later than February 25, 2026.

106. Marco’s infringement of the ’435 Patent has been and continues to be knowing, intentional, and willful.

107. Marco’s acts of infringement of the ‘435 Patent have caused and will continue to cause Glick damages for which Glick is entitled to compensation pursuant to 35 U.S.C. § 284.

108. Glick is entitled to treble damages under 35 U.S.C. § 284 because Marco’s infringement has been willful.

109. Marco’s acts of infringement of the ‘435 Patent have caused and will continue to cause Glick immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Glick has no adequate remedy at law.

110. This case is exceptional and, therefore, Glick is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

## COUNT III
## INFRINGEMENT OF U.S. DESIGN PATENT NO. D767,111

111. Glick repeats and realleges paragraphs 1 through 110 hereof, as if fully set forth herein.

112. Glick owns all right, title, and interest in and to the ‘111 Patent.

113. The ’111 Patent is valid and enforceable.

114. Upon information and belief, Marco has directly infringed and continues to directly infringe the ‘111 Patent by making, using, offering for sale, and selling in the United States, and/or importing into the United States the SSV, including within this judicial district, in violation of 35 U.S.C. § 271(a).

115. Upon information and belief, Marco has induced and continues to induce infringement of the ‘111 Patent in violation of 35 U.S.C. § 271(b) by actively and knowingly encouraging, instructing, directing, and/or aiding others to use, install, sell, offer for sale, and/or distribute the SSV in a manner that infringes the ‘111 Patent.

116. Marco has had knowledge of the ‘111 Patent and its infringement thereof since at least December 9, 2025, and no later than February 25, 2026.

117. Marco’s infringement of the ‘111 Patent has been and continues to be knowing, intentional, and willful.

118. Marco’s acts of infringement of the ‘111 Patent have caused and will continue to cause Glick damages for which Glick is entitled to compensation pursuant to 35 U.S.C. §§ 284 or 289.

119. Glick is entitled to treble damages under 35 U.S.C. § 284 because Marco’s infringement has been willful.

120. Marco’s acts of infringement of the ‘111 Patent have caused and will continue to cause Glick immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Glick has no adequate remedy at law.

121. This case is exceptional and, therefore, Glick is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

**COUNT IV**
**INFRINGEMENT OF U.S. DESIGN PATENT NO. D770,028**

122. Glick repeats and realleges paragraphs 1 through 121 hereof, as if fully set forth herein.

123. Glick owns all right, title, and interest in and to the ‘028 Patent.

124. The ‘028 Patent is valid and enforceable.

125. Upon information and belief, Marco has directly infringed and continues to directly infringe the ‘028 Patent by making, using, offering for sale, and selling in the United States, and/or importing into the United States the SSV, including within this judicial district, in violation of 35 U.S.C. § 271(a).

126. Upon information and belief, Marco has induced and continues to induce infringement of the ‘028 Patent in violation of 35 U.S.C. § 271(b) by actively and knowingly encouraging, instructing, directing, and/or aiding others to use, install, sell, offer for sale, and/or distribute the SSV in a manner that infringes the ‘028 Patent.

127. Marco has had knowledge of the ‘028 Patent and its infringement thereof since at least December 9, 2025, and no later than February 25, 2026.

128. Marco’s infringement of the ‘028 Patent has been and continues to be knowing, intentional, and willful.

129. Marco’s acts of infringement of the ‘028 Patent have caused and will continue to cause Glick damages for which Glick is entitled to compensation pursuant to 35 U.S.C. §§ 284 or 289.

130. Glick is entitled to treble damages under 35 U.S.C. § 284 because Marco’s infringement has been willful.

131. Marco’s acts of infringement of the ‘028 Patent have caused and will continue to cause Glick immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Glick has no adequate remedy at law.

132. This case is exceptional and, therefore, Glick is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

**COUNT V**
**MISAPPROPRIATION OF TRADE SECRETS**
**UNDER THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836**

133. Glick repeats and realleges paragraphs 1 through 132 hereof, as if fully set forth herein.

134. Glick owns trade secrets within the meaning of 18 U.S.C. § 1839, including, without limitation, trade secrets relating to the equipment, tooling, manufacturing processes, techniques, methods, know-how, and production information used to manufacture SNAP-Z® vents.

135. Glick’s trade secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from their disclosure or use.

136. Glick has taken reasonable measures to maintain the secrecy of its trade secrets, including restricting access to its facility and manufacturing processes and requiring nondisclosure agreements before allowing access to confidential production information.

137. Marco learned of Glick’s trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

138. Marco’s representatives were permitted to access Glick’s trade-secret information only after signing nondisclosure agreements.

139. Marco knew or should have known that Glick's trade secrets were confidential and subject to restrictions on use and disclosure.

140. Marco misappropriated Glick's trade secrets by acquiring, retaining, using, disclosing, and/or exploiting Glick's trade secrets without authorization and in breach of duties owed to Glick.

141. Upon information and belief, Marco used Glick's trade secrets to develop, manufacture, and commercialize the SSV.

142. Marco's misappropriation has caused and will continue to cause substantial and irreparable injury to Glick.

143. Marco's misappropriation was willful and malicious.

144. Glick is entitled to injunctive relief, damages for actual loss, damages for unjust enrichment, reasonable royalty damages, exemplary damages, attorneys' fees, costs, and all other relief available under 18 U.S.C. § 1836.

**COUNT VI**
**MISAPPROPRIATION OF TRADE SECRETS UNDER THE**
**OKLAHOMA UNIFORM TRADE SECRETS ACT, 78 Okla. Stat. §§ 85-94**

145. Glick repeats and realleges paragraphs 1 through 144 hereof, as if fully set forth herein.

146. Glick owns trade secrets within the meaning of 78 Okla. Stat. § 86, including, without limitation, trade secrets relating to the equipment, tooling, manufacturing processes, techniques, methods, know-how, and production information used to manufacture SNAP-Z® vents.

147. Glick's trade secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from their disclosure or use.

148. Glick has taken reasonable measures to maintain the secrecy of its trade secrets, including restricting access to its facility and manufacturing processes and requiring nondisclosure agreements before allowing access to confidential production information.

149. Marco learned of Glick's trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

150. Marco's representatives were permitted to access Glick's trade-secret information only after signing nondisclosure agreements.

151. Marco knew or should have known that Glick's trade secrets were confidential and subject to restrictions on use and disclosure.

152. Marco misappropriated Glick's trade secrets by acquiring, retaining, using, disclosing, and/or exploiting Glick's trade secrets without authorization and in breach of duties owed to Glick.

153. Upon information and belief, Marco used Glick's trade secrets in Oklahoma to develop, manufacture, and commercialize the SSV.

154. Marco's misappropriation has caused and will continue to cause substantial and irreparable injury to Glick.

155. Marco's misappropriation was willful and malicious.

156. Glick is entitled to injunctive relief, damages for actual loss, damages for unjust enrichment, reasonable royalty damages, exemplary damages, attorneys' fees, costs, and all other relief available under 78 Okla. Stat. §§ 87-89.

## COUNT VII
## UNFAIR COMPETITION

157. Glick repeats and realleges paragraphs 1 through 156 hereof, as if fully set forth herein.

158. The conduct of Marco as described above constitutes unfair competition in violation of Oklahoma law.

159. As a direct and proximate result of Marco's unfair competition, Glick has suffered, and will continue to suffer, economic loss for which Glick is entitled to monetary damages to be determined at trial, interest, costs and injunctive relief prohibiting use of Glick's confidential business information by Marco.

160. In addition, upon information and belief, Marco's unfair competition is and/or was malicious, wanton, reckless, willful, oppressive and/or done with the intent to injure Glick and its business, thereby entitling Glick to exemplary damages in an amount to be determined at trial.

## COUNT VIII
## UNJUST ENRICHMENT

161. Glick repeats and realleges paragraphs 1 through 160 hereof, as if fully set forth herein.

162. Marco has been unjustly enriched by the use of Glick's confidential information.

163. Glick is entitled to recover against Marco for the reasonable value of the benefits derived by Marco for its wrongful conduct in an amount to be proven at trial.

164. Marco should not be allowed to continue using wrongfully obtained confidential information of Glick, consequently, Glick is entitled to an injunction restraining Marco from further use of the same, as well as future sales and use of any product which incorporate, in whole or in part, or arise out of use of Glick's confidential information.

## REQUEST FOR RELIEF

WHEREFORE, Glick respectfully requests that this Court enter judgment in its favor and against Marco as follows:

A. Adjudging that Marco has infringed, actively induced infringement of, and contributorily infringed the ’767 Patent, in violation of 35 U.S.C. § 271(a), (b), and (c);

B. Adjudging that Marco has infringed and actively induced infringement of the ’435 Patent, in violation of 35 U.S.C. § 271(a) and (b);

C. Adjudging that Marco has infringed and actively induced infringement of the ‘111 Patent, in violation of 35 U.S.C. § 271(a) and (b);

D. Adjudging that Marco has infringed and actively induced infringement of the ‘028 Patent, in violation of 35 U.S.C. § 271(a) and (b);

E. Permanently enjoining Marco, its officers, agents, servants, employees, attorneys, successors, assigns, affiliates, subsidiaries, and all persons acting in concert or participation with any of them from infringing, contributing to the infringement or, or inducing infringement of the Asserted Patents;

F. Ordering Marco to account for and pay damages adequate to compensate Glick for Marco’s infringement of the Asserted Patents, together with pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

G. Ordering that damages for Marco’s willful patent infringement be increased up to three times the amount found or assessed pursuant to 35 U.S.C. § 284;

H. Ordering Marco to account for and disgorge its total profits from infringement of the ’111 Patent and the ’028 Patent pursuant to 35 U.S.C. § 289;

I. Adjudging that Marco has misappropriated Glick’s trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836;

J. Adjudging that Marco has misappropriated Glick’s trade secrets in violation of the Oklahoma Uniform Trade Secrets Act, 78 Okla. Stat. §§ 85-94;

K. Adjudging that Marco's conduct constitutes unfair competition in violation of Oklahoma law;

L. Adjudging that Marco has been unjustly enriched by the use of Glick's confidential information;

M. Permanently enjoining Marco, its officers, agents, servants, employees, attorneys, successors, assigns, affiliates, subsidiaries, and all persons acting in concert or participation with any of them from using, disclosing, retaining, exploiting, or benefiting from Glick's trade secrets;

N. Ordering Marco to return or destroy all documents, files, materials, equipment, tooling, drawings, specifications, samples, prototypes, electronic files, and other things containing, reflecting, derived from, or embodying Glick's trade secrets;

O. Ordering Marco to account for and pay damages for misappropriation of Glick's trade secrets including actual loss, unjust enrichment, and/or a reasonable royalty;

P. Ordering exemplary damages for Marco's willful and malicious misappropriation of Glick's trade secrets;

Q. Ordering Marco to account for and pay damages for Marco's unfair competition, including exemplary damages;

R. Declaring this case exceptional and awarding Glick its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

S. Ordering an accounting for all infringing sales and all profits, revenues, benefits, and unjust enrichment obtained by Marco from its infringement and misappropriation;

T. Awarding such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial on all issues so triable.

Dated: September 21, 2026

Respectfully submitted,

*s/ Zachary A.P. Oubre*
Zachary A.P. Oubre, OBA # 30666
McAFEE & TAFT A Professional Corporation
Eighth Floor, Two Leadership Square
211 North Robinson Ave.
Oklahoma City, OK 73102
(405) 235-9621
(405) 228-7334 (fax)
zach.oubre@mcafeetaft.com

*and*

Salvatore Anastasi*
Kevin C. Myhre*
Thad M. Gelsinger*
BARLEY SNYDER
2 Great Valley Parkway, Suite 110
Malvern, PA 19355
Telephone: (610) 889-3699
Facsimile: (610) 889-3696
sanastasi@barley.com
kmyhre@barley.com
tgelsinger@barley.com
**Pro Hac Vice* Forthcoming

***Attorneys for Plaintiff***